UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KAMAL MUZAFFAR, M.D.,

    Plaintiff,

-vs-                              File No. _____

AURORA HEALTH CARE SOUTHERN
LAKES, INC.,

    Defendant.

## COMPLAINT

**NOW COMES** the above-named Plaintiff, by his attorneys, Godfrey, Leibsle, Blackbourn & Howarth, S.C., and as and for a cause of action against the above-named Defendant alleges and shows to the Court as follows:

    1.    Plaintiff, Kamal Muzaffar, M.D ("Dr. Muzaffar"), is a physician licensed in the State of Wisconsin, with a business address of 100 South Washington Street, Elkhorn, Wisconsin 53121.

    2.    Defendant, Aurora Health Care Southern Lakes, Inc. ("Aurora"), upon information and belief, is a nonstock corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at 750 W. Virginia Street, Milwaukee, Wisconsin 53204, whose registered agent at that address is Michael Lappin.

    3.    This action arises under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd. Jurisdiction over the subject matter of this action is conferred upon this Court under 28 U.S.C. § 1331.

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claim in this action occurred in this district.

5. Aurora owns and operates Aurora Lakeland Medical Center located in Elkhorn, Wisconsin ("Aurora Lakeland").

6. Aurora Lakeland is a participating hospital under EMTALA.

7. Dr. Muzaffar contracts with Aurora to provide physician services under hospital privileges at Aurora Lakeland.

8. Relations with physician service providers at Aurora Lakeland are governed by a committee of physicians known as the Medical Executive Committee.

9. In February 2010, Dr. Muzaffar was the doctor on call at Aurora Lakeland, when a request came in from Mercy Walworth Hospital & Medical Center ("Mercy"), to transfer a patient to Aurora Lakeland. The patient had previously undergone an organ transplant procedure and believed the transplanted organ was failing.

10. Dr. Muzaffar was familiar with the patient who was the subject of the transfer request and believed this patient would receive better care from an endocrinologist at Mercy Hospital in Janesville, Wisconsin. As a result Dr. Muzaffar initially refused to authorize the transfer of this patient from Mercy to Aurora Lakeland. The Mercy physician did not agree and forced the patient's transfer to Aurora Lakeland.

11. On the same day of this disputed transfer, two other patients were also transferred from Mercy to Aurora Lakeland without Dr. Muzaffar's knowledge or consent. These transfers were authorized by another physician notwithstanding the fact Dr. Muzaffar was the Aurora Lakeland on-call physician at the time for these patients. Had Dr. Muzaffar been consulted, he

would have refused to authorize the transfer of these two patients unless the other physician completed legally mandated transfer documentation in compliance with EMTALA. In these instances, the mandated transfer paperwork had not been completed.

12. Dr. Muzaffar reported his belief that EMTALA was violated to the Medical Executive Committee.

13. On July 1, 2010, Dr. Muzaffar was summoned to appear at a meeting of the Medical Executive Committee. The Medical Executive Committee led Dr. Muzaffar to believe that this meeting had been scheduled to address his complaints about the Mercy transfers and EMTALA violations.

14. At the July 1, 2010 meeting, the Medical Executive Committee addressed a completely different subject matter, openly criticizing Dr. Muzaffar for his alleged interaction difficulties with colleagues.

15. At the July 1, 2010, meeting, the Medical Executive Committee threatened Dr. Muzaffar's medical admitting privileges at Aurora Lakeland if he pursued the disputed Mercy transfer issues and EMTALA violations.

16. On July 8, 2010, the Medical Executive Committee issued a letter memorializing the "recommendations" it had unfairly forced upon Dr. Muzaffar at the July 1, 2010, meeting.

17. Aurora later denied that Dr. Muzaffar had been critized at the July 1, 2010, Medical Executive Committee meeting.

18. Still later, however, Aurora admitted actions of the Medical Executive Committee on July 1, 2010, and the July 8, 2010, Medical Executive Committee letter constituted criticism of Dr. Muzaffar, in violation of Aurora's medical bylaws.

19. The July 1 and July 8, 2010, actions were in retaliation for Dr. Muzaffar's reporting that the Mercy transfers violated EMTALA.

20. After the July 1, 2010, Medical Executive Committee meeting, one of Dr. Muzaffar's colleagues asked Dr. Muzaffar what had happened between Dr. Muzaffar and the Medical Executive Committee at that meeting. The colleague told Dr. Muzaffar he had "heard something through the grapevine."

21. An investigation by the State of Wisconsin ultimately resulted in a finding that an EMTALA violation had been committed in connection.

22. In 2011 Aurora failed to respond when Dr. Muzaffar reported that certain other hospital transfers violated EMTALA. In one instance, an Aurora physician improperly refused to accept a patient transfer from a long term care facility. In another instance, the Aurora physician refused to properly transfer a patient from Aurora Lakeland to Aurora St. Lukes Medical Center.

23. Aurora continues to penalize Dr. Muzaffar for reporting the EMTALA violations.

24. In January 2013, Aurora refused to provide Dr. Muzaffar with the right to purchase access to "Aurora Epic," Aurora Lakeland's electronic medical records software program, for his private practice, although Dr. Muzaffar has admitting privileges at Aurora Lakeland. Denial of access to the "Aurora Epic" medical records software system prevents Dr. Muzaffar from providing his patients with the most effective and efficient care.

-4-

25. Notwithstanding its having denied Dr. Muzaffar access to the "Aurora Epic" software, Aurora has permitted a similarly situated physician to have access to Aurora Lakeland medical records through the "Aurora Epic" software.

26. Dr. Muzaffar has suffered financial losses, distress, and humiliation as a result of Aurora's retaliatory conduct.

**WHEREFORE**, Dr. Muzaffar requests judgment against Aurora as follows:

a. For compensatory damages in an amount to be determined at trial.

b. For punitive damages, in an amount to be determined at trial.

c. For an award of Dr. Muzaffar's costs and disbursements incurred in bringing this action, including reasonable attorney fees.

d. For such other and further relief as the Court may deem just and equitable.

Dated this 28th day of June, 2013.

        GODFREY, LEIBSLE, BLACKBOURN &
         HOWARTH, S.C.
        Attorneys for Plaintiff

        By: s/Lisle W. Blackbourn
          Lisle W. Blackbourn (1003897)

**PLEASE TAKE NOTICE THAT THE PLAINTIFF DEMANDS THAT THIS ACTION BE TRIED BY A 12-PERSON JURY.**

Lisle W. Blackbourn
GODFREY, LEIBSLE, BLACKBOURN &
 HOWARTH, S.C.
354 Seymour Court
Elkhorn, Wisconsin 53121
Telephone: (262) 723-3220
Facsimile: (262) 723-5091
email: lblackbourn@godfreylaw.com
T:\E\Elkhorn\FamilySC\Aurora Litigation\off copy\complaint-11.wpd