# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**KAMAL MUZAFFAR, M.D.,**

    Plaintiff,

  v.                                                                                               Case No. 13-CV-744

**AURORA HEALTH CARE SOUTHERN LAKES, INC.,**

    Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

      This lawsuit, which arises under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, presents an issue of first impression. Is a physician who enjoys privileges at a hospital an employee of that hospital for purposes of EMTALA's whistleblower provision? For the reasons I explain in this decision, I answer in the affirmative and deny defendant's motion to dismiss.

## BACKGROUND

      Plaintiff, Kamal Muzaffar, M.D. ("Dr. Muzaffar"), brings this lawsuit against Aurora Health Care Southern Lakes, Inc. ("Aurora") claiming that he was retaliated against by Aurora because he reported patient transfers he believes violated EMTALA. Aurora, in turn, filed a motion to dismiss for lack of subject matter jurisdiction arguing that Dr. Muzaffar raised no federal question. On October 4, 2013, I entered an order requiring the parties to submit supplemental briefs on the issue of jurisdiction.

As I explained in the October 4, 2013 order (Docket # 19), Aurora not only raised a facial challenge to jurisdiction but also a factual challenge to jurisdiction. A factual challenge lies where "the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). Where the party challenging jurisdiction challenges the factual basis of jurisdiction, "'[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (quoting *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007)); *see also United Phosphorus*, 322 F.3d at 946; *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 n.2 (7th Cir. 2002); *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). Indeed, because "jurisdiction cannot be conferred by consent of the parties . . . the court is duty-bound to demand proof of its truth." *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986).

The plaintiff contends that EMTALA confers jurisdiction in this case. In his supplemental brief and supporting affidavit, Dr. Muzaffar explains that he applied for Medical Staff membership and admitting privileges at Aurora Lakeland in 2001. (Supp. Br., Docket # 20 at 2; Muzzafar Aff., Docket # 21 at ¶ 3.) His application was processed by Aurora's Credentials and Verification Service and then reviewed and approved by Aurora's Medical Staff governing board. (*Id.*) As a member of the Medical Staff, Dr. Muzaffar's relationship with Aurora is governed by Aurora's Medical Staff Bylaws ("Bylaws"). (*Id.* at ¶ 2.) The Bylaws require that members of the Medical Staff perform certain functions, including "providing on-call coverage for emergency care services within his/her

clinical specialty." (Aurora Lakeland Medical Center Medical Staff Bylaws § 2.8.9, Docket # 21-1 at 12.) Dr. Muzaffar avers that at the time he reported EMTALA violations, he was required to provide on-call coverage for emergency services (Docket # 21 at ¶ 4), and it was while he was on-call at Aurora Lakeland that he "observed what [he] believed to be EMTALA violations" (*id.* at ¶ 6). He further avers that at the time he observed the EMTALA violations, his schedule for on-call duties was set by Aurora Lakeland. (*Id.* at ¶ 7.) When Dr. Muzaffar performed his on-call services, he "directly and personally provided medical evaluation and treatment to Aurora's emergency room patients" and was "personally responsible for making decisions regarding stabilizing and transferring patients and conforming to EMTALA in handling [the] patients." (*Id.* at ¶ 5.)

Aurora does not contest the statements made in Dr. Muzaffar's affidavit. But Aurora submits that Dr. Muzaffar is not its employee. His on-call services are a condition of privileging rather than a condition of employment. (Docket # 24 at 2.) Aurora, by the affidavit of Barbara J. Fleming, states that Aurora does not compensate Dr. Muzaffar in any way; it does not provide him with employment benefits, does not pay his malpractice premiums, does not provide him with office space, does not bill his patients, does not pay his income or social security taxes, and does not provide him with paid vacation. (Aff. of Barbara J. Fleming, Docket # 24-1 at ¶ 5.) Fleming also avers that physicians employed by Aurora enter into and are governed by a Physician Employment Agreement, and Dr. Muzaffar has not entered into a Physician Employment Agreement. (*Id.* at ¶¶ 2-3.) She further avers that Dr. Muzaffar's application for privileges lists his primary office, mailing address, and billing address as Elkhorn Family Clinic, S.C. (*Id.* at ¶ 4.) Fleming avers that Dr. Muzaffar is not required to admit his patients to Aurora and "is free to associate himself with other hospitals." (*Id.* at ¶ 5.)

## ANALYSIS

EMTALA prohibits hospitals from inappropriately transferring or refusing to provide medical care to persons with emergency medical conditions. 42 U.S.C. §§ 1395dd(a)-(c) (requiring hospitals to provide medical screening and stabilizing treatment for all patients with emergency medical conditions). The purpose of the statute is to prevent "patient dumping," the practice of refusing to provide emergency medical treatment to patients who are unable to pay, or transferring them before their emergency conditions are stabilized. *See Beller v. Health and Hosp. Corp. of Marion County, Indiana*, 703 F.3d 388, 390 (7th Cir. 2012) (internal citations omitted). EMTALA provides a private right of action for individuals who sustain personal harm as result of a hospital's violation of the statute. *See* 42 U.S.C. § 1395dd(d)(2)(A). It also contains a whistleblower provision in 42 U.S.C. §1395dd(i) "to ensure that such person are not penalized or retaliated against for reporting violations of [EMTALA's] terms." *O'Connor v. Jordan Hospital*, No. 10-11416-MBB, 2013 WL 3105647, *5 (D. Mass. Jun. 17, 2013). The relevant portion reads:

> (i) Whistleblower protections. A participating hospital may not penalize or take adverse action against a qualified medical person described in subsection (c)(1)(A)(iii) or a physician because the person or physician refuses to authorize the transfer of an individual with an emergency medical condition that has not been stabilized or against any hospital employee because the employee reports a violation of a requirement of this section.

The whistleblower provision, therefore, protects two categories of individuals: (1) qualified medical persons or physicians who refuse to authorize a transfer of a patient who has not been stabilized and (2) hospital employees who report violations of EMTALA. As was noted in my prior decision, Dr. Muzaffar clearly does not fall within the first category of protected individuals. The dispute concerns the second category: whether Dr. Muzaffar is a hospital employee for purposes of EMTALA's whistleblower provision.

- 4 -

The statute does not define employee as used in the whistleblower provision. Dr. Muzaffar does not claim to be an employee of Aurora. Aurora, for its part, asserts that Dr. Muzaffar is not its employee but merely has hospital privileges. Thus, the question is whether Dr. Muzaffar, a physician who enjoys privileges at Aurora, is an employee of Aurora for purposes of EMTALA's whistleblower protection. Dr. Muzaffar, relying on *Zawislak v. Memorial Hermann Hospital System*, No. H-11-1335, 2011 WL 5082422 (S.D. Tex. Oct. 26, 2011), makes a largely policy-based argument, stating that finding he is not an employee of Aurora for purposes of EMTALA would contravene the purposes of the statute. Aurora counters that Dr. Muzaffar is not an employee and argues that courts should use Title VII jurisprudence to determine if an individual is an employee for purposes of EMTALA whistleblower protection. Specifically, Aurora argues that under Seventh Circuit precedent, a physician with staff privileges is not an employee but rather an independent contractor for purposes of bringing an employment discrimination suit under Title VII. *See Alexander v. Rush North Shore Medical Center*, 101 F.3d 487 (7th Cir. 1996) (applying the common law agency test to determine whether a physician with staff privileges was an employee or independent contractor for purposes of bringing a Title VII claim and finding he was an independent contractor); *Vakhario v. Swedish Covenant Hosp.*, 190 F.3d 799 (7th Cir. 1999) (applying five-factor common law agency test to find that anesthesiologist was an independent contractor and could not bring a Title VII employment discrimination claim). Aurora further argues that Title VII jurisprudence should apply "because at least one federal district court has held that '[c]ourts examine EMTALA-retaliation claims under Title VII jurisprudence.'" (Docket # 24 at 5) (citing *Elkharwily v. Mayo Holding Company*, No. 12-3062, 2013 WL 3338731 (D. Minn. Jul. 2, 2013) (internal citations omitted)).

As I indicated at the outset, this is an issue of first impression. The Title VII cases on which Aurora relies are not helpful. It is true that under Seventh Circuit precedent, a physician with staff privileges is not an employee but rather an independent contractor for purposes of bringing an employment discrimination suit under Title VII. However, Aurora has not cited—and I have not found—any Seventh Circuit cases applying this rule to EMTALA generally or, of importance here, to the definition of employee under EMTALA's whistleblower protection. I also observe that the independent contractor rule and the accompanying five-part test is congruent with Title VII's purpose of prohibiting workplace discrimination because an employer cannot prevent discrimination against an employee or in a workplace he does not control. Thus, if EMTALA's whistleblower provision's purpose was the protection of employees from workplace discrimination, the Title VII independent contractor analysis would be helpful in defining employee under the EMTALA whistleblower provision. That is not the case. As indicated earlier, EMTALA's purpose is to prevent patient dumping and the whistleblower provision enforces that purpose.

This is not to say that Title VII cases are not used in analyzing EMTALA claims. Indeed, at least two federal district courts have used Title VII jurisprudence to examine an EMTALA retaliation claim: *Elkharwily v. Mayo Holding Company*, No. 12-3062, 2013 WL 3338731 (D. Minn. Jul. 2, 2013) (internal citations omitted), cited by Aurora, and *O'Connor v. Jordan Hospital*, No. 10-11416-MBB, 2013 WL 3105647 (D. Mass. Jun. 17, 2013). In both cases, however, Title VII cases were cited for the type of evidence needed to show retaliation and the requisite elements for a prima facie case of retaliation. Neither court was presented with the contested issue in this case—the definition of employee under the whistleblower provision. In fact, in *Elkharwily*, there was no dispute as to the employer-employee relationship in the case. The plaintiff was an employee under contract. 2013 WL

3338731 at *1. Similarly, there was no dispute as to the plaintiff's employment status in *O'Connor*. She was a nurse at the defendant hospital. 2013 WL 3105647 at *2-3. Accordingly, these cases are also unhelpful.

Absent guidance from the Title VII cases and the EMTALA retaliation cases discussed above, I turn to *Zawislak*, the only case on point. In *Zawislak*, a physician with medical staff privileges brought a suit under EMTALA's whistleblower provision, alleging that his staff privileges were revoked after he reported two EMTALA violations he observed at the hospital where he had privileges. 2011 WL 5082422, at *1. As in this case, the defendant argued that the plaintiff was not covered by EMTALA's whistleblower protection because Dr. Zawislak's staff privileges did not make him a hospital employee. *Id.* at *3-4. The court found that the purposes of EMTALA would be frustrated if a physician who had staff privileges was not considered an employee for purposes of whistleblower protection. The court explained:

> The court does not agree that, because the act affirmatively prohibits hospitals from taking adverse action against "any hospital employee," it impliedly permits hospitals to take adverse action against physicians with hospital privileges who have observed and reported EMTALA violations. Such a result would seem to contradict the very purpose of EMTALA. The legislative purpose of the statute is best served by construing it to prohibit participating hospitals from penalizing physicians with medical privileges. . . . A physician with medical privileges in a hospital's emergency room is in an advantageous position to observe whether a hospital is encouraging and instructing physicians to dump patients.

*Id.* at *4.

I agree with *Zawislak*'s reasoning. Though the "plain meaning of legislation" is usually conclusive, the Supreme Court has recognized that there are "'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (quoting *Griffing v. Oceanic*

- 7 -

*Contractors, Inc.*, 458 U.S. 564, 571 (1982)). Using the plain meaning of employee—one who works for and is paid by another person, business, or firm—would result in Dr. Muzaffar not being considered an employee for purposes of the EMTALA whistleblower provision. To repeat, EMTALA was passed in order to avoid the practice of "patient dumping." *See Beller*, 703 F.3d at 390. The federal government cannot be in all emergency hospitals at all times. Enforcement of the statute must therefore depend on those working in hospitals who are in the best position to observe and report EMTALA violations. To find that physicians with staff privileges are not employees for purposes of EMTALA's whistleblower provision would leave unprotected a group of people in an "advantageous position" to observe and report potential violations. This would be "demonstrably at odds" with the purpose of the statute as well as the intentions of the drafters, which were to provide protection to those reporting violations.

Aurora argues that *Zawislak* is inapposite because, unlike the plaintiff in that case, Dr. Muzaffar did not observe violations at the hospital where he has privileges. I find this to be a distinction without a difference. A privileged physician is in an "advantageous position" to observe potential EMTALA violations committed by both the hospital where he has staff privileges and by hospitals transferring to the hospital where he has staff privileges. Thus, the purpose of EMTALA—to prevent patient dumping—is achieved whether the reporting physician is privileged at the hospital receiving the patient or the hospital transferring the patient.

Therefore, the defendant's motion to dismiss for lack of subject matter jurisdiction will be denied.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendant's motion to dismiss for lack of subject matter jurisdiction is **DENIED.**

**IT IS ALSO ORDERED** that the defendant shall have until December 9, 2013 to respond to the plaintiff's motion for leave to file an amended complaint (Docket # 22).

Dated at Milwaukee, Wisconsin this 27th day of November, 2013.

> BY THE COURT
>
> *s/Nancy Joseph*
> NANCY JOSEPH
> United States Magistrate Judge