The Medical Executive Committee,
Aurora Lakeland Medical Center,
Elkhorn, Wisconsin 53121.
Tuesday, February 23, 2010

Members,

It is with profound sadness that I'm requesting the medical executive committees involvement in the issue that I'm about to relate. This involves a colleague for whom up until now I had deep respect. I have debated this in my mind long enough to know that I'm not being casual about this issue.

Sometime in the evening of February 13 or the morning of February 14, a patient of Dr. Poplar presented to the emergency-room of the Mercy Walworth hospital. I'm uncertain of the details of this patient however Dr. Fasano proceeded to admit this patient to the Lakeland medical Center under the service of Dr. Poplar. He did this without consulting me the doctor on call for Dr. Poplar or Dr. Poplar himself. Rather, he notified Dr. Poplar of this admission in the evening of February 14. He related Dr. Poplar the reasons for his actions. I'm going to reserve my comments on Dr. Fasano's conduct or the rationale that he gave to Dr. Poplar. I'm going to encourage the members to talk to Dr. Poplar and Dr. Fasano to establish the facts.

After the committee has had the opportunity to examine the issue, I would appreciate a written response to my two questions here:

1. Were the actions of Dr. Fasano in violation of the bylaws?

2. What safeguards has the hospital instituted that ensures that patients may be admitted to a physician's service only after the physician has agreed to the admission in person?

The reason for above questions to the committee is my concern that the current policy and procedure leaves an obvious exposure for poor outcome for the patients and consequent litigation and possible regulatory audit for both the physicians and hospital.

Sincerely,

Kamal Syed Muzaffar.

EXHIBIT

C

tabbies

Case 2:13-cv-00744-NJ   Filed 04/30/15   Page 1 of 43   Document 72-3   KM 024

Medical Staff Office
W3985 County Road NN
Elkhorn, WI 53121

T (262) 741 2037
F (262) 741 2830
lou.gibson@aurora.org

March 15, 2010

Kamal S Muzaffar, MD
Elkhorn Family Clinic SC
100 S Washington
Elkhorn, WI 53121

Dear Dr. Muzaffar:

The Medical Executive Committee is in receipt of your letter dated February 23, 2010 informing the committee of a situation occurring between a Mercy Emergency Department physician, a Mercy primary care physician and yourself.

The committee would like you to know that an investigation regarding the circumstances of the situation you described in your letter will take place.

The committee will inform you when the investigation is complete.

Sincerely,

Greg Gerber, MD
President-Medical Staff

Medical Staff Office        T (262) 741 2037
W3985 County Road NN    F (262) 741 2830
Elkhorn, WI 53121        lou.gibson@aurora.org

**Aurora Lakeland Medical Center**·

August 12, 2009

Kamal S Muzaffar, MD    **CERTIFIED:  7006 2150 0002 3321 2332**
Elkhorn Family Clinic SC
100 S Washington
Elkhorn, WI  53121

Dear Dr Muzaffar:

Aurora Lakeland Medical Center is in receipt of your letter dated August 6, 2009 regarding peer review information being dictated by Dr. Bortin into Cerner.

Please be aware that the information is in the process of being removed.
In addition, Dr. Bortin will be contacted and instructed not to dictate peer review information into Cerner.

Sincerely,

Greg L. Gerber md

Greg Gerber, MD
President-Medical Staff

o:\mlg\mec\letters\dr. muzaffar - response to pr info in cenrner 8 09.doc  08/12/2009

**Dr. Greg Gerber**
**Aurora Lakeland Medical Center**
W3985 County Road NN
Elkhorn, WI 53121.

Dr. Gerber,
I want to thank you for your prompt action regarding the posting of privileged matter on
CERNER.

Sincerely,

Kamal Muzaffar MD.



**Aurora Lakeland Medical Center**

**Aurora Lakeland Medical Center** •

July 7, 2010

Kamal S Muzaffar, MD
Elkhorn Family Clinic SC
100 S Washington
Elkhorn, WI 53121

Dear Dr. Muzaffar:

In response to your request that the Medical Executive Committee perform an investigation into the matter described in your letter dated February 23, 2010, the Committee has looked into your allegations of the legality of admitting a patient into another physicians' service. We have found that this is a non-issue and no further action will be taken.

Sincerely,

Greg Gerber, MD
President-Medical Staff

Case 2:13-cv-00744-NJ   Filed 04/30/15   Page 5 of 43   Document 72-3   KM 028

**Aurora Lakeland Medical Center**

Medical Staff Office
W3985 County Road NN
Elkhorn, WI 53121

T (262) 741 2037
F (262) 741 2830
lou.glbson@aurora.org

July 8, 2010

Kamal S Muzaffar, MD
Elkhorn Family Clinic SC
100 S Washington
Elkhorn, WI 53121

**Certified: 7009 2820 0002 3859 5231**

Dr. Muzaffar:

Thank you for attending the Medical Executive Committee meeting on July 2, 2010. Please consider this letter a follow up to the issues that were discussed.

As stated at the meeting, the committee has noted a repeated pattern of interaction difficulties with your colleagues. The committee values your staff membership and wishes to assist you in obtaining a positive working relationship with your peers.

The following is strongly recommended by the Medical Executive Committee:

- **Counseling:** A list of counselor's is attached. The expectation is that you seek one out and commit to a meeting schedule

- **Working with a mentor:** Dr. Cary Berkowitz has agreed to be available to you in an advisor/mentor capacity. The expectation is that you will meet weekly for a three month period of time beginning immediately

Please remember that you were also advised that there will be zero tolerance for any future similar incidents. Should the committee receive another report regarding negative interactions with your colleagues, corrective action will be pursued.

Sincerely,

Greg L. Gerber MD

Greg Gerber, MD
President-Medical Staff

Cc: Dr. Cary Berkowitz

m:\worddata\muzaffar letter #1 July 2010.doc 07/09/2010

July 8, 2010
-2-
Attachment


Counseling Resources:

Dan Bishop, PhD-Credence Counseling, Elkhorn (262) 723-3424

ARO Counseling - Waukesha (262) 524-9416
      Jeanne Baskom, LCSW
      Thomas Speaker, LCSW
      Michael Jaworski, LPC

**Aurora Lakeland Medical Center**

W3985 County Road NN
Elkhorn, WI 53121-4337

7009 0282 0000 3659 5231

CERTIFIED MAIL

7009 0282 0000 3659 5231

RETURN RECEIPT
REQUESTED

Kamal S Muzaffar, MD
Elkhorn Family Clinic S
100 S Washington
Elkhorn, WI 53121

1st NOTICE
2nd NOTICE
RETURNED



Hasler

US:42650944E
$05.540
07/09/2010
Mailed From 53105
US POSTAGE

KM 031

*Providing Quality Legal Service Since 1922*

**Kim A. Howarth**
**354 Seymour Court**
**Elkhorn, WI 53121**
khowarth@godfreylaw.com
**262-723-3220 (office)**
**262-741-1525 (direct)**
**262-723-7538 (facsimile)**

August 18, 2010

Greg Gerber, MD
President-Medical Staff
Aurora Lakeland Medical Center
Medical Staff Office
W3985 County Road NN
Elkhorn, WI 53121

**RE:   Kamal S. Muzaffar, MD**

Dear Dr. Gerber:

This letter is to inform you that our office represents Kamal S. Muzaffar, MD. This letter is in response to your Corrective Action letter dated July 8, 2010, regarding the result of a meeting between the Medical Executive Committee and Dr. Muzaffar on July 2, 2010.

It is our opinion that the Medical Executive Committee failed to follow the Aurora Lakeland Medical Center Medical Staff Bylaws ("Bylaws") in deciding the Corrective Action against Dr. Muzaffar. The Bylaws, under Art. 4.1.3., require that a practitioner, such as Dr. Muzaffar, receive written notice that a Corrective Action investigation has been requested on the practitioner, the grounds for the Corrective Action investigation of the practitioner and an option to request a preliminary interview with the Medical Executive Committee. Nowhere in the Bylaws, outside of a summary suspension, does it allow the Medical Executive Committee to reprimand a practitioner and issue a Corrective Action without first providing notice to the practitioner.

In this matter, Dr. Muzaffar did not receive the required notice that the Medical Executive Committee was considering a Corrective Action against him and that Dr. Muzaffar had an option to request a preliminary interview. Dr. Muzaffar attended the Medical Executive Committee meeting on July 2, 2010, expecting a discussion regarding an investigation he had requested on February 23, 2010, but was surprised to find that the meeting was a Corrective Action investigation against him. Dr. Muzaffar was unprepared for such a meeting. The Medical Executive Committee should have provided Dr. Muzaffar with the required written notice that the Medical Executive Committee was considering



a Corrective Action against him. In light of the Medical Executive Committee's violation of its Bylaws, it is our opinion that the Medical Executive Committee did not have the authority to issue the Corrective Action of July 8, 2010. We therefore expect that this Corrective Action be removed from the record.

In addition, Dr. Muzaffar disagrees with the Medical Executive Committee's assessment. It is our position that the alleged conflicts occurred as a result of Dr. Muzaffar's efforts to provide the best care to his patients and to protect himself and the Aurora Lakeland Medical Center from liability. Dr. Muzaffar was concerned that there had been a lack of compliance with EMTALA on behalf of Mercy physicians.

Dr. Muzaffar would sincerely like to cooperate with Aurora Lakeland Medical Center and the Medical Executive Committee to foster a better working relationship with his colleagues and continue to grow in his practice at Aurora Lakeland Medical Center. As a result, we will agree to use Dr. Cary Berkowitz as a mediator if any conflicts should arise. Dr. Muzaffar values his opportunity at Aurora Lakeland Medical Center and wants to continue being a valued member of the Aurora community.

Please call if you have any questions.

Very truly yours,

GODFREY, LEIBSLE, BLACKBOURN
& HOWARTH, S.C.

By: _____
Kim A. Howarth

KAH:KET:jks
cc:    Kamal S. Muzaffar, MD

T:\E\Elkhorn\FamilySC\corr\2010\081810gg-ket.wpd

Medical Staff Office
W3985 County Road NN
Elkhorn, WI  53121

T (262) 741 2037
F (262) 741 2830
lou.gibson@aurora.org

**Aurora Lakeland Medical Center•**

September 10, 2010

Kim A. Howarth
Godfrey, Leibsle, Blackbourn & Howarth, S.C.
354 Seymour Court
Elkhorn, WI 53121                      Certified:  7006 0810 0005 0853 9233

RE:    Kamal S. Muzaffar, MD

Dear Mr. Howarth:

I am writing in response to your letter dated August 18, 2010 in which you take
exception with the process afforded your client, Dr. Kamal Muzaffar, by Aurora
Lakeland Medical Center (the "Hospital").

First, it is important to clarify that, contrary to your understanding, the Hospital did not
initiate nor did it take any corrective action as defined by the Medical Staff Bylaws of the
Hospital against Dr. Muzaffar.  In this instance, a formal request for corrective action
was not submitted to the Medical Executive Committee.  Accordingly, Dr. Muzaffar was
never under formal investigation and no adverse action was taken against him.  Rather,
there were some concerns expressed to Medical Staff leadership regarding Dr.
Muzaffar's behavior.  These were discussed with Dr. Muzaffar at the Medical Executive
Committee meeting held on July 2, 2010.  That meeting was followed by the
recommendations of the Medical Executive Committee set forth in its July 8, 2010 letter
to Dr. Muzaffar.

Had the Hospital received a formal request for corrective action, the procedures you
reference contained in Section 4.1 of the Medical Staff Bylaws would have been
initiated.  However, Medical Staff leadership did not believe that the issues presented
were of the nature that would rise to the level of initiating corrective action and formal
investigation.  In doing so, the Medical Executive Committee was acting in Dr.
Muzaffar's best interests as this means he has not been under investigation.
Accordingly, he will not need to state that he has been place under investigation or had
corrective action taken against him when he applies to any other facility.

The July 8, 2010 letter does not represent a corrective action under the Hospital's
Medical Staff Bylaws.  This is a recommendation for Dr. Muzaffar's consideration as
well as a statement of the Medical Executive Committee's expectations for behavior.

received
9-13-10
KM  034

Because this is merely a recommendation, it does not rise to the level of corrective action and does not require the level of due process required by the Medical Staff Bylaws.

Please be assured that if the Medical Executive Committee has reason to take further action against Dr. Muzaffar that rises to the level of warranting a request for corrective action and formal investigation, he will be afforded the full procedural rights set forth in the Medical Staff Bylaws.

Should you have any further questions or concerns regarding this matter, it may be helpful for you to direct your inquiries to our Chief Compliance Officer, Carrie Killoran, Esq. (carrie.killoran@aurora.org or 414-647-3004). Otherwise, we trust that this clarification will resolve your concerns.

Sincerely,

Greg F. Gerber MD

Greg Gerber, MD
President-Medical Staff

cc:    Carrie Killoran, Esq. (via email)
       Kamal Muzaffar, Esq.

**Aurora Lakeland Medical Center**

W3985 County Road NN
Elkhorn, WI 53121-4337

MEDICAL STAFF
OFFICE

CERTIFIED MAIL

7006 0810 0005 0853 9233

NOTICE
2nd NOTICE
RETURNED



Hasler

$05.540

Mailed From: 53905
09/10/2010
US POSTAGE

RETURN RECEIPT
REQUESTED

Kim A. Howarth
Godfrey, Leibsle, Blackbourn & Howarth, S.C.
354 Seymour Court
Elkhorn, WI 53121

KM 036

**GODFREY, LEIBSLE, BLACKBOURN & HOWARTH, S.C.**
ATTORNEYS AT LAW

Kim A. Howarth
354 Seymour Court
Elkhorn, WI 53121
khowarth@godfreylaw.com
262-723-3220 (office)
262-741-1525 (direct)
262-723-7538 (facsimile)

*Providing Quality Legal Service Since 1922*

December 21, 2010

Ms. Carrie Killoran
Chief Compliance Officer
Aurora Lakeland Medical Center
Medical Staff Office
W3985 County Road NN
Elkhorn, WI 53121

RE:    Kamal Muzaffar, M.D.

Dear Ms. Killoran:

This letter is in response to a letter dated September 10, 2010 from Dr. Gerber regarding the Medical Executive Committee's investigation into Dr. Kamal Muzaffar. We disagree with Dr. Gerber's assessment of the Medical Executive Committee's investigation of Dr. Muzaffar, which resulted in a letter dated July 8, 2010, from the Medical Executive Committee to Dr. Muzaffar.

On February 23, 2010, Dr. Muzaffar sent a written request to the Medical Executive Committee to investigate improper conduct of a physician at Mercy Walworth Hospital regarding a transfer of a patient to Aurora Lakeland Medical Center and possible EMTALA violations. In response to the request, the Medical Executive Committee instead began an investigation of Dr. Muzaffar. On July 7, 2010, Dr. Gerber sent a letter to Dr. Muzaffar responding to Dr. Muzaffar's request for an investigation stating that Dr. Muzaffar's allegations were a "non-issue" and that no further action would be taken. A copy of the July 7, 2010 letter is enclosed for your review. The Medical Executive Committee made its determinations regarding Dr. Muzaffar without interviewing Dr. Muzaffar. On July 8, 2010, Dr. Gerber sent Dr. Muzaffar a letter stating that the Medical Executive Committee had determined that a pattern of conflicts had developed between Dr. Muzaffar and his colleagues.



In his September 10, 2010, letter, Dr. Gerber insists that the July 8, 2010, letter was merely a list of recommendations for Dr. Muzaffar. However, the July 8, 2010, letter clearly states that there was expectation that Dr. Muzaffar would meet the Medical Executive Committee's conditions. The Medical Executive Committee also stated that there would be zero tolerance for any future conflict between Dr. Muzaffar and his colleagues. However, Dr. Muzaffar was not given an opportunity to discuss his concerns about possible EMTALA violations and to discuss the Medical Executive Committee's concerns. Instead, the Medical Executive Committee came to its conclusion on Dr. Muzaffar before speaking to Dr. Muzaffar. It is our position that the Medical Executive Committee's investigation was improper, and it was improper for the Medical Executive Committee to mandate that Dr. Muzaffar meet the obligations stated in the July 8, 2010, letter.

In addition, please find enclosed a report from the Wisconsin Department of Health Services ("DHS") investigating possible EMTALA violations by Mercy Walworth Hospital & Medical Center. According to the report, DHS determined that numerous patient records did not have the necessary transfer information as required under EMTALA, including specific patients identified by Dr. Muzaffar to the Medical Executive Committee. In response to Dr. Muzaffar's request to investigate possible EMTALA violations, Dr. Gerber responded that this was a non-issue and that no action would be taken. Dr. Muzaffar identified EMTALA violations, notified the Medical Executive Committee, and was ignored. Instead of investigating the EMTALA violations, the Medical Executive Committee responded by engaging in an improper investigation of Dr. Muzaffar.

We demand that the July 8, 2010, letter, and all references to that letter, be expunged from Dr. Muzaffar's records and that the contents of said letter be kept confidential. Dr. Muzaffar has incurred legal costs in responding to the Medical Executive Committee's letter. These legal expenses were incurred to address and correct the Medical Executive Committee's mishandling of Dr. Muzaffar's request for investigation into possible EMTALA violations. We demand that he be reimbursed for the legal expenses that he has incurred in responding in this matter. We also request that he receive a written admission from the Medical Executive Committee that its investigation of Dr. Muzaffar was improper and that the Medical Executive Committee mishandled the situation.



GODFREY, LEIBSLE,
BLACKBOURN & HOWARTH, S.C.
ATTORNEYS AT LAW

Ms. Carrie Killoran
December 21, 2010
Page 3

Please call if you have any questions.

Very truly yours,

GODFREY, LEIBSLE,
BLACKBOURN & HOWARTH, S.C.

By:

Kim A. Howarth

KAH:KET:jks
Enclosures
cc:     Dr. Kamal Muzaffar

T:\E\Elkhorn\FamilySC\corr\2010\122110-ck-kat.wpd

Wisconsin Department of Health Services

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 1062 | A. BUILDING _____<br>B. WING _____ | C<br>08/24/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MERCY WALWORTH HOSPITAL & MEDICAL C | N2950 STATE ROAD 67<br>LAKE GENEVA, WI 53147 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| R 000 | INITIAL COMMENTS | R 000 | | |
| | Surveyor: 26711<br>An unannounced on-site survey was conducted at Mercy Walworth Hospital in Lake Geneva, WI from 8/23/2010-8/24/2010 for complaint #WI00015220. | | | |
| | Mercy Walworth Hospital was found to be out of compliance with WI Administrative Code for Hospitals, DHS 124, in the areas of Patient Rights, Nursing Services, and Medical Records. | | | |
| | The following abbreviations are used throughout this statement of deficiency: RN=Registered Nurse, ER=Emergency Room, MD=Medical Doctor, Pt.=Patient. | | | |
| R 247 | 124.05(3)(a)1.I. GOVERNING BODY - POLICIES | R 247 | | |
| | Patient rights and responsibilities. Every hospital shall have written policies established by the governing board on patient rights and responsibilities which shall provide that: | | | |
| | Except in emergencies, the patient may not be transferred to another facility without being given a full explanation for the transfer, without provision being made for continuing care and without acceptance by the receiving institution;<br>This Rule is not met as evidenced by:<br>Surveyor: 26711<br>Based on policy/procedure review, review of facility's transfer form (COBRA form), staff interviews, and medical record reviews, this facility failed to document the risks and benefits | | | |

For long term care providers, a plan of correction is required for class A, B, & C violations.

LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE

TITLE                    (X6) DATE

STATE FORM                              6899          XVQZ11                    If continuation sheet 1 of 8

Case 2:13-cv-00744-NJ   Filed 04/30/15   Page 17 of 43   Document 72-3   KM 040

Wisconsin Department of Health Services

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1062 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C 08/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MERCY WALWORTH HOSPITAL & MEDICAL C | N2950 STATE ROAD 67 LAKE GENEVA, WI 53147 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| R 247 | Continued From page 1 | R 247 | | |
| | for transfers to a higher level of care facility when such transfers occurred, in 6 out of 6 medical records reviewed (Patients #10, 11, 12,13, 14, and 15) out of a total of 15 records reviewed. Failure to document individualized risks and benefits to patients related to transfers fails to identify the unique needs of each patient requiring an advanced level of care. | | | |
| | Findings include: | | | |
| | Facility policy titled, "Patient Rights and Responsibilities," dated 6/26/09 and reviewed by Surveyor #26711 on 8/23/2010 at 3:30 p.m., states on page 2, 2.7, that patients have, "The right, except in emergencies, not to be transferred to another facility without being given a full explanation of the transfer, without provision being made for continuing care, and without acceptance by the receiving institution." | | | |
| | Facility policy titled, "EMTALA Screening, Treatment & Transfer of Patients," dated 5/12/09 and reviewed by Surveyor #26711 on 8/23/2010 at 3:30 p.m., states in section D. Patient Transfers, 1.0, b., "Physician Certification...The certification must contain a summary of the specific risks and benefits on which it is based." | | | |
| | The facility's transfer form (COBRA form) is a computer generated form which reiterates Federal EMTALA (Emergency Medical Treatment and Active Labor Act) regulations and language. There are seven sections to this form: Patient's Condition; Reason for Transfer; Transfer Requirements; Consent; Certification; Items sent with Patient; and Nurse Certification. | | | |
| | The section titled, "Patient's Condition," is a computer generated statement and does not | | | |

Case 2:13-cv-00744-NJ   Filed 04/30/15   Page 18 of 43   Document 72-3   KM 041

Wisconsin Department of Health Services

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1062 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C 08/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MERCY WALWORTH HOSPITAL & MEDICAL C | N2950 STATE ROAD 67 LAKE GENEVA, WI 53147 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| R 247 | Continued From page 2 | R 247 | | |
| | include any medical information about the patient at all. It is the same for all 6 patients. | | | |
| | The section titled, "Reason for Transfer," does not identify why the patient requires transfer to a higher level of care facility other than a computer generated statement that states, "...The medical benefits reasonably expected for the provision of appropriate medical treatment in another medial facility outweigh the increased risks, if any, to the individual's medical condition from effecting the transfer. Benefits include definitive care not available at our facility and risks include a MVA [motor vehicle accident] and deterioration of condition during travel." This statement does not identify risks and benefits specific to the patient and is the same for all 6 patients. | | | |
| | In an interview with RN Lead E on 8/23/2010 at 3:45 p.m., when asked where the documentation of the patient's risks and benefits for transfer would be, stated, "It would be in the dictation." | | | |
| | In an interview with ER MD F on 8/24/2010 at 8:05-8:12 a.m., in response to the question, "How are risks and benefits of transfer documented?" MD F responded, "Risks and benefits are dictated, generally not hand written." MD F stated that if a patient leaves against medical advise then the risks and benefits might be written in on that form. MD F also stated that this is F's practice and cannot speak to what other MD's do. | | | |
| | A review of Pt. #10's ER record from 2/13/2010 was reviewed on 8/23/2010 at 1:10 p.m. Pt. #10 came to the ER with chest pain, shortness of breath, and a very high blood sugar. Pt. #10 signed a transfer form to be transferred to a higher level of care facility. There is no | | | |

For long term care providers, a plan of correction is required for class A, B, & C violations.
STATE FORM        6899      XVQZ11      If continuation sheet 3 of 9

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1062 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C 08/24/2010 |
|---|---|---|---|
| NAME OF PROVIDER OR SUPPLIER MERCY WALWORTH HOSPITAL & MEDICAL C | | STREET ADDRESS, CITY, STATE, ZIP CODE N2950 STATE ROAD 67 LAKE GENEVA, WI 53147 | |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| R 247 | Continued From page 3 | R 247 | | |
| | documentation within the medical record stating what the benefits or risks for the transfer are. | | | |
| | These findings were confirmed by RN Manager D and RN Lead E on 8/23/2010 at 3:45 p.m. | | | |
| | A review of Pt. #11's ER record from 1/19/2010 was reviewed on 8/24/2010 at 8:50 a.m. Pt. #11 came to the ER with mild anemia (low oxygen level in the blood), thrombocytopenia (low platelets-abnormal bleeding time) and other medical problems. Pt. #11 signed a transfer form to be transferred to a higher level of care facility. There is no documentation within the medical record stating what the benefits or risks for the transfer are. | | | |
| | A review of Pt. #12's ER record from 6/12/2010 was reviewed on 8/24/2010 at 9:03 a.m. Pt. #12 came to the ER with right leg cellulitis (inflammation/infection of the tissues) and also had an extensive medical history. Pt. #12 signed a transfer form to be transferred to a higher level of care facility. There is no documentation within the medical record stating what the benefits or risks for the transfer are. | | | |
| | A review of Pt. #13's ER record from 6/26/10 was reviewed on 8/24/2010 at 9:10 a.m. Pt. #13 came to the ER with a kidney infection. Pt. #13 signed a transfer form to be transferred to a higher level of care facility. There is no documentation within the medical record stating what the benefits or risks for the transfer are. | | | |
| | A review of Pt. #14's ER record from 1/19/2010 was reviewed on 8/24/2010 at 8:50 a.m. Pt. #14 came to the ER with a kidney infection. Pt. #14 signed a transfer form to be transferred to a higher level of care facility. There is no | | | |

For long term care providers, a plan of correction is required for class A, B, & C violations.
STATE FORM        ****     XVQZ11        If continuation sheet 4 of 9

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1062 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C 08/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MERCY WALWORTH HOSPITAL & MEDICAL C | N2950 STATE ROAD 67 LAKE GENEVA, WI 53147 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| R 247 | Continued From page 4 | R 247 | | |
| | documentation within the medical record stating what the benefits or risks for the transfer are or what the reason for transfer is. | | | |
| | A review of Pt. #15's ER record from 1/19/2010 was reviewed on 8/24/2010 at 8:50 a.m. Pt. #15 came to the ER with restricted blood flow to the left hand and a heart problem. Pt. #15 signed a transfer form to be transferred to a higher level of care facility. There is no documentation within the medical record stating what the benefits or risks for the transfer are or what the reason for transfer is. | | | |
| | These findings were confirmed by RN Manager D on 8/24/2010 at 9:30 a.m. | | | |

For long term care providers, a plan of correction is required for class A, B, & C violations.
STATE FORM          XVQZ11          If continuation sheet 5 of 9

 **Aurora Health Care**

750 W. Virginia Street
P.O. Box 341880
Milwaukee, WI 53215-1880

www.AuroraHealthCare.org

March 11, 2011

Mr. Kim A. Howarth
354 Seymour Court
Elkhorn, WI 53121

Re: Dr. Kamal Muzaffar

Dear Mr. Howarth:

I am writing in follow up to your correspondence dated December 21, 2010. I apologize for the length of time it has taken me to respond, but I wanted to ensure that I had the opportunity to fully investigate the allegations raised in your letter.

Please have my full assurance that Aurora Lakeland Medical Center ("ALMC") and its Medical Executive Committee are committed to ensuring that all members of its Medical Staff are treated with respect and fairness and are afforded their full rights as set forth in the Medical Staff Bylaws.

In reviewing this matter, I believe there are three key issues to address: (1) did the Medical Executive Committee act appropriately on Dr. Muzzafar's request to investigate the incident at Mercy Walworth Hospital ("Mercy"); (2) did the Medical Executive Committee initiate corrective action against Dr. Muzzafar in retaliation for bringing forward the request to review the Mercy incident; and (3) did the Medical Executive Committee fail to follow the Medical Staff Bylaws when it issued the July 8, 2010 letter to Dr. Muzzafar.

While I appreciate the concerns your client has raised, I believe the Medical Staff has acted appropriately with respect to each of these instances.

1.  Did the Medical Executive Committee appropriately act on Dr. Muzzafar's request to investigate the incident at Mercy involving a transfer of a patient to ALMC?

In February 2010, Dr. Greg Gerber received a letter from Dr. Muzzafar regarding a patient transferred from Mercy. The complaint alleged by Dr. Muzzafar related to whether Mercy appropriately called the correct on-call physician. This is not an issue that ALMC has control over. Additionally, whether the correct physician was contacted by another hospital does not in and of itself constitute an EMTALA violation.

I reviewed the citation issued to Mercy by DHS that you provided. While it identifies documentation problems at Mercy with respect to the completeness of their documentation of

risks and benefits on the transfer form, it does not raise issues that ALMC could effectively investigate relative to an inappropriate transfer.

Please be assured that Dr. Muzzafar's request was reviewed and considered, but it was determined that this was not an issue appropriate for ALMC to take action on.

2. **Did the Medical Executive Committee initiate corrective action against Dr. Muzzafar in retaliation for bringing forward the request to review the Mercy incident?**

I believe it is important to note that at no time has corrective action been initiated against Dr. Muzzafar. As set forth in Section 4.1 of the Medical Staff Bylaws, for corrective action to be initiated, it must be accompanied by a formal written request. From my review, no such request was ever submitted relative to Dr. Muzzafar. Accordingly, no investigation was commenced pursuant to the Medical Staff Bylaws.

While no formal action was ever taken, issues do arise from time to time involving Medical Staff members. When a concern is raised in this context, it often is not serious enough to rise to the level of warranting corrective action. However, the Medical Executive Committee may have discussion around the concern. This does not constitute an "investigation" under the Medical Staff Bylaws.

From my review, it should be made clear that at no time was Dr. Muzzafar under investigation by the Medical Executive Committee. Certainly, no retaliatory request for corrective action was submitted because he raised concerns regarding the transfer from Mercy.

3. **Did the Medical Executive Committee fail to follow the Medical Staff Bylaws when it issued the July 8, 2010 letter to Dr. Muzzafar?**

As noted above, a request for corrective action was never filed against Dr. Muzzafar. He was not under investigation. The Medical Executive Committee was made aware of concerns regarding his interactions with fellow members of the Medical Staff. He was asked by the Medical Executive Committee to appear before it to discuss some of those concerns. This was an informal request. Dr. Muzzafar did in fact come to the Medical Executive Committee's meeting on July 1, 2010 to discuss the issues of concern.

Contrary to the allegations set forth in your letter, the Medical Executive Committee did meet with Dr. Muzzafar prior to issuing the letter dated July 8, 2010. The purpose of this meeting was to discuss his interactions with other members of the Medical Staff, particularly around on-call issues. Following this meeting, the Medical Executive Committee issued its July 8th letter with its recommendations for Dr. Muzzafar. The letter itself is would be classified as a letter of warning, which does not constitute an "adverse action" entitling Dr. Muzzafar to any fair hearing or appellate review rights. *See* Section 5.2.2 of the Medical Staff Bylaws. The Medical

Executive Committee has wide latitude to provide advice and recommendations to its members. Whether they choose to follow such recommendations is up to the individual member.

The Medical Executive Committee acted appropriately in this matter. Accordingly, ALMC does not agree to your demands for retraction and attorneys' fees.

While I appreciate that receiving a letter of warning of this nature can be distressing for a physician, it is not an uncommon practice and does not warrant the escalation that has occurred with this matter to date. My understanding is that there have been no further issues since July. Accordingly, I would hope that the parties can agree to close this matter at this time.

Should you have any further questions or need any further assistance on this matter, please feel free to contact me at 414-299-1711 or by email at carrie.killoran@aurora.org.

Very Truly Yours,

Carrie Norbin Killoran
VP & Chief Compliance Officer
Aurora Health Care, Inc.

cc:     Greg Gerber, M.D.
        Theresa Poepping



**GODFREY, LEIBSLE,**
**BLACKBOURN & HOWARTH, S.C.**
ATTORNEYS AT LAW

Kim A. Howarth
354 Seymour Court
Elkhorn, WI 53121
khowarth@godfreylaw.com
262-723-3220 (office)
262-741-1525 (direct)
262-723-7538 (facsimile)

*Providing Quality Legal Service Since 1922*

April 25, 2011

Ms. Carrie Killoran
Chief Compliance Officer
Aurora Lakeland Medical Center
Medical Staff Office
W3985 County Road NN
Elkhorn, WI 53121

RE:  Kamal Muzaffar, M.D.

Dear Ms. Killoran:

This letter is a follow up to our letter that we sent to you on December 21, 2010. In that letter we demanded that the July 8, 2010, letter, and all references to that letter, be expunged from Dr. Muzaffar's records and that the contents of said letter be kept confidential. We also demanded that Aurora Lakeland Medical Center ("Aurora") reimburse Dr. Muzaffar for the legal expenses that he has incurred due to the Medical Executive Committee's mishandling of Dr. Muzaffar's request for an investigation into possible EMTALA violations.

Due to your lack of response, this will confirm that you concede that the Medical Executive Committee mishandled this situation, that Aurora will reimburse Dr. Muzaffar's legal expenses, and that Aurora will expunge and ensure to keep confidential all contents and references to the July 8, 2010, letter.

Please call if you have any questions.

Very truly yours,

GODFREY, LEIBSLE,
BLACKBOURN & HOWARTH, S.C.

By: _____
Kim A. Howarth

KAH:KET:jks
cc:   Dr. Kamal Muzaffar

T:\BElkhorn\Family\Client\2011\042511-ck-kat.wpd

**GODFREY, LEIBSLE,**
**BLACKBOURN & HOWARTH, S.C.**
ATTORNEYS AT LAW

Providing Quality Legal Service Since 1922

Kim A. Howarth
354 Seymour Court
Elkhorn, WI 53121
khowarth@godfreylaw.com
262-723-3220 (office)
262-741-1525 (direct)
262-723-5091 (facsimile)

October 27, 2011

Ms. Carrie Norbin Killoran
V.P. & Chief Compliance Officer
Aurora Health Care, Inc.
750 W. Virginia Street
P.O. Box 341880
Milwaukee, WI 53215-1880

        RE:   **Dr. Kamal Muzaffar**

Dear Ms. Killoran:

      On August 3, 2011, you and I met to discuss my demands regarding the letter sent to Dr. Kamal Muzaffar on July 8, 2010 by the Medical Executive Committee ("MEC") of Aurora Lakeland Medical Center ("ALMC"). During our meeting, you stated that you would take the matter under advisement and contact me with your decision. As I have not heard back from you, I ask that you consider the following in furtherance of our meeting:

      Although ALMC has previously denied that the MEC's letter to Dr. Muzaffar constituted a form of corrective action against him, in your March 11, 2011 letter to me, you stated that the MEC's letter to Dr. Muzaffar "would be classified as a letter of warning". I agree with this assessment.

      Pursuant to the Medical Staff Bylaws ("Bylaws") of ALMC, it is clear that warning letters are a form of corrective action. *See* Bylaws § 4.1.5(b) and § 5.2.2(i). In fact, the only references to warning letters in the Bylaws are contained in the articles titled "Corrective Actions" and "Hearing & Appellate Review Procedure", both of which deal with disciplinary measures against physicians. As you know, corrective actions must be initiated through a formal written request, followed by notice to the affected physician that advises him of the basis for the request and affords the opportunity to request a preliminary interview with the MEC to "discuss, explain or refute" the allegations. *See* Bylaws § 4.1.3(a) & (b) and § 4.1.4. None of these rights were made available to my client here.



In your letter to me, you further stated that in addition to being a "letter of warning", the MEC's letter to Dr. Muzaffar also contained "recommendations" for my client. Under the Bylaws, the MEC's powers are specifically enumerated. With regard to issuing recommendations, the MEC is empowered to make recommendations to the administrator or governing board of the medical center. *See* Bylaws § 6.2(g) & (h). However, no mention is made of the MEC's ability to issue recommendations to a physician. Although the MEC has the power to "take all reasonable steps to ensure professional ethical conduct and competent clinical performance on the part of all appointees to the medical staff," in this case, Dr. Muzaffar's ethics and competency were never called into question. Therefore, this 'catch all' authority can not be used to justify the recommendations made to Dr. Muzaffar, which apparently stemmed from his personal interactions with colleagues.

Because the MEC did not follow the procedures necessary to issue a warning letter against Dr. Muzaffar, and because the MEC lacked authority to make any recommendations to my client, the MEC acted in violation of the Bylaws. Wisconsin courts have held that medical staff bylaws can be construed as contracts between medical centers and physicians, and that a physician can maintain a breach of contract suit against a medical center for any action taken in violation of such bylaws. *See Bass v. Ambrosius*, 185 Wis.2d 879, 884-886, 520 N.W.2d 625 (Ct. App. 1994).

Based on the foregoing, I reiterate my demands that (i) the MEC's letter to Dr. Muzaffar be expunged from his records and the contents of said letter be kept confidential, (ii) ALMC reimburse my client for the legal expenses he has incurred in responding to this matter, and (iii) the MEC issue a written admission that it has mishandled this situation.

Please note that although my client values his relationship with ALMC, he also values his reputation, which has been damaged by the MEC's actions. And, as we have previously discussed, my client remains concerned that the MEC's actions were taken in retaliation against him after he reported possible EMTALA violations to the MEC. Accordingly, Dr. Muzaffar has authorized my firm to institute an action against ALMC for breach of contract, among other potential claims. It is our hope that this will not be necessary. Please contact me at your earliest convenience so that we may discuss alternatives to litigation.

Very truly yours,

GODFREY, LEIBSLE,
BLACKBOURN & HOWARTH, S.C.

By:

Kim A. Howarth

KAH:PSD:jks
cc:    Dr. Kamal Muzaffar

PRINTED: 10/13/2010
FORM APPROVED

Wisconsin Department of Health Services

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1082 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C 08/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MERCY WALWORTH HOSPITAL & MEDICAL C | N2950 STATE ROAD 67 LAKE GENEVA, WI 53147 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| R 000 | INITIAL COMMENTS | R 000 | | |
| | Surveyor: 26711 An unannounced on-site survey was conducted at Mercy Walworth Hospital in Lake Geneva, WI from 8/23/2010-8/24/2010 for complaint #WI00015220. | | | |
| | Mercy Walworth Hospital was found to be out of compliance with WI Administrative Code for Hospitals, DHS 124, in the areas of Patient Rights, Nursing Services, and Medical Records. | | | |
| | The following abbreviations are used throughout this statement of deficiency: RN=Registered Nurse, ER=Emergency Room, MD=Medical Doctor, Pt.=Patient. | | | |
| R 247 | 124.05(3)(a)1.l. GOVERNING BODY - POLICIES | R 247 | | |
| | Patient rights and responsibilities. Every hospital shall have written policies established by the governing board on patient rights and responsibilities which shall provide that: | | | |
| | Except in emergencies, the patient may not be transferred to another facility without being given a full explanation for the transfer, without provision being made for continuing care and without acceptance by the receiving institution; This Rule is not met as evidenced by: Surveyor: 26711 Based on policy/procedure review, review of facility's transfer form (COBRA form), staff interviews, and medical record reviews, this facility failed to document the risks and benefits | | | |

For long term care providers, a plan of correction is required for class A, B, & C violations.

| | | | TITLE | (X6) DATE |
|---|---|---|---|---|

LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE

| STATE FORM | 6488 | XVQZ11 | If continuation sheet 1 of 9 |
|---|---|---|---|

PRINTED: 10/13/2010
FORM APPROVED

Wisconsin Department of Health Services

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | | A. BUILDING _____ | | C |
| | 1062 | B. WING _____ | | 08/24/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MERCY WALWORTH HOSPITAL & MEDICAL C | N2950 STATE ROAD 67 LAKE GENEVA, WI 53147 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| R 247 | Continued From page 1 | R 247 | | |
| | for transfers to a higher level of care facility when such transfers occurred, in 6 out of 6 medical records reviewed (Patients #10, 11, 12, 13, 14, and 15) out of a total of 15 records reviewed. Failure to document individualized risks and benefits to patients related to transfers fails to identify the unique needs of each patient requiring an advanced level of care. | | | |
| | Findings include: | | | |
| | Facility policy titled, "Patient Rights and Responsibilities," dated 6/26/09 and reviewed by Surveyor #26711 on 8/23/2010 at 3:30 p.m., states on page 2, 2.7, that patients have, "The right, except in emergencies, not to be transferred to another facility without being given a full explanation of the transfer, without provision being made for continuing care, and without acceptance by the receiving institution." | | | |
| | Facility policy titled, "EMTALA Screening, Treatment & Transfer of Patients," dated 5/12/09 and reviewed by Surveyor #26711 on 8/23/2010 at 3:30 p.m., states in section D. Patient Transfers, 1.0, b., "Physician Certification...The certification must contain a summary of the specific risks and benefits on which it is based." | | | |
| | The facility's transfer form (COBRA form) is a computer generated form which reiterates Federal EMTALA (Emergency Medical Treatment and Active Labor Act) regulations and language. There are seven sections to this form: Patient's Condition; Reason for Transfer; Transfer Requirements; Consent; Certification; Items sent with Patient; and Nurse Certification. | | | |
| | The section titled, "Patient's Condition," is a computer generated statement and does not | | | |

For long term care providers, a plan of correction is required for class A, B, & C violations.
STATE FORM                                        6699            XVQZ11                          If continuation sheet 2 of 9

PRINTED: 10/13/2010
FORM APPROVED

Wisconsin Department of Health Services

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1062 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C 08/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MERCY WALWORTH HOSPITAL & MEDICAL C | N2950 STATE ROAD 67 LAKE GENEVA, WI 53147 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| R 247 | Continued From page 2 | R 247 | | |
| | include any medical information about the patient at all. It is the same for all 6 patients. | | | |
| | The section titled, "Reason for Transfer," does not identify why the patient requires transfer to a higher level of care facility other than a computer generated statement that states, "...The medical benefits reasonably expected for the provision of appropriate medical treatment in another medial facility outweigh the increased risks, if any, to the individual's medical condition from effecting the transfer. Benefits include definitive care not available at our facility and risks include a MVA [motor vehicle accident] and deterioration of condition during travel." This statement does not identify risks and benefits specific to the patient and is the same for all 6 patients. | | | |
| | In an interview with RN Lead E on 8/23/2010 at 3:45 p.m., when asked where the documentation of the patient's risks and benefits for transfer would be, stated, "It would be in the dictation." | | | |
| | In an interview with ER MD F on 8/24/2010 at 8:05-8:12 a.m., in response to the question, "How are risks and benefits of transfer documented?" MD F responded, "Risks and benefits are dictated, generally not hand written." MD F stated that if a patient leaves against medical advise then the risks and benefits might be written in on that form. MD F also stated that this is F's practice and cannot speak to what other MD's do. | | | |
| | A review of Pt. #10's ER record from 2/13/2010 was reviewed on 8/23/2010 at 1:10 p.m. Pt. #10 came to the ER with chest pain, shortness of breath, and a very high blood sugar. Pt. #10 signed a transfer form to be transferred to a higher level of care facility. There is no | | | |

For long term care providers, a plan of correction is required for class A, B, & C violations.

STATE FORM          ●●●●          XVQZ11          If continuation sheet 3 of 9

Wisconsin Department of Health Services

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1082 | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | | A. BUILDING _____ | C |
| | | B. WING _____ | 08/24/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MERCY WALWORTH HOSPITAL & MEDICAL C | N2950 STATE ROAD 67 LAKE GENEVA, WI 53147 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| R 247 | Continued From page 3 | R 247 | | |
| | documentation within the medical record stating what the benefits or risks for the transfer are. | | | |
| | These findings were confirmed by RN Manager D and RN Lead E on 8/23/2010 at 3:45 p.m. | | | |
| | A review of Pt. #11's ER record from 1/19/2010 was reviewed on 8/24/2010 at 8:50 a.m. Pt. #11 came to the ER with mild anemia (low oxygen level in the blood), thrombocytopenia (low platelets-abnormal bleeding time) and other medical problems. Pt. #11 signed a transfer form to be transferred to a higher level of care facility. There is no documentation within the medical record stating what the benefits or risks for the transfer are. | | | |
| | A review of Pt. #12's ER record from 6/12/2010 was reviewed on 8/24/2010 at 9:03 a.m. Pt. #12 came to the ER with right leg cellulitis (inflammation/infection of the tissues) and also had an extensive medical history. Pt. #12 signed a transfer form to be transferred to a higher level of care facility. There is no documentation within the medical record stating what the benefits or risks for the transfer are. | | | |
| | A review of Pt. #13's ER record from 6/26/10 was reviewed on 8/24/2010 at 9:10 a.m. Pt. #13 came to the ER with a kidney infection. Pt. #13 signed a transfer form to be transferred to a higher level of care facility. There is no documentation within the medical record stating what the benefits or risks for the transfer are. | | | |
| | A review of Pt. #14's ER record from 1/19/2010 was reviewed on 8/24/2010 at 8:50 a.m. Pt. #14 came to the ER with a kidney infection. Pt. #14 signed a transfer form to be transferred to a higher level of care facility. There is no | | | |

For long term care providers, a plan of correction is required for class A, B, & C violations.
STATE FORM                    XVQZ11                    If continuation sheet 4 of 9

Wisconsin Department of Health Services

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | | A. BUILDING _____ | | C |
| | **1092** | B. WING _____ | | **08/24/2010** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MERCY WALWORTH HOSPITAL & MEDICAL C | N2950 STATE ROAD 87<br>LAKE GENEVA, WI 53147 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| R 247 | Continued From page 4<br><br>documentation within the medical record stating what the benefits or risks for the transfer are or what the reason for transfer is.<br><br>A review of Pt. #15's ER record from 1/19/2010 was reviewed on 8/24/2010 at 8:50 a.m. Pt. #15 came to the ER with restricted blood flow to the left hand and a heart problem. Pt. #15 signed a transfer form to be transferred to a higher level of care facility. There is no documentation within the medical record stating what the benefits or risks for the transfer are or what the reason for transfer is.<br><br>These findings were confirmed by RN Manager D on 8/24/2010 at 9:30 a.m. | R 247 | | |
| R 431 | 124.13(6)(c) DOCUMENTATION, STAFF MEETINGS\EVALUATION<br><br>Documentation of nursing care shall be pertinent and concise and shall describe patient needs, problems, capabilities and limitations Nursing interventions and patient responses shall be noted.<br><br>This Rule is not met as evidenced by:<br>Surveyor: 26711<br>Based on medical record review, policy/procedure review, and staff interview, this facility failed to perform/document pain reassessments in 3 out of 10 (Pt.'s #3, 4, and 5) out of a total of 15 records reviewed and failed to respond timely to the needs of 1 out of 10 (Pt. #7) out of a total of 15 records reviewed. Failure to perform, document, and/or act timely on the needs of patient's can negatively impact the | R 431 | | |

For long term care providers, a plan of correction is required for class A, B, & C violations.

STATE FORM                                    XVQZ11                          If continuation sheet 5 of 9

Case 2:13-cv-00744-NJ   Filed 04/30/15   Page 32 of 43   Document 72-3   KM   055

Wisconsin Department of Health Services

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1062 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C 08/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MERCY WALWORTH HOSPITAL & MEDICAL C | N2950 STATE ROAD 67 LAKE GENEVA, WI 53147 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| R 431 | Continued From page 5<br><br>evaluation of the patient's progress and care.<br><br>Findings include:<br><br>Facility policy titled, "Pain Assessment and Management," dated 5/27/2010 was reviewed on 8/23/2010 at 4:30 p.m. The policy states, on page 2, 5.3, "Accountability for pain management lies with the healthcare team providing care to patient including assessment and reassessment of pain scores and effectiveness of management plan per departmental standards and/or guidelines."<br><br>Per Director H, in an e-mail sent to Surveyor #26711 on 8/26/2010 at 8:19 a.m., the expection in the ER is for pain reassessment within one hour and as needed.<br><br>A review of Pt. #3's closed ER record was completed on 8/23/2010 at 11:13 a.m. Pt. #3 presented to the ER with pain and swelling in the left leg. Pt. #3 received Morphine IV (intravenous) at 6:02 p.m. in the ER. There is no reassessment of pain between the time Pt. #3 received the pain medication and was transferred to the medical floor after 8:00 p.m.<br><br>A review of Pt. #4's closed ER record was completed on 8/23/2010 at 11:35 p.m. Pt. #4 presented to the ER with complaints of a sinus infection with symptoms that, as documented by the Physician Assistant, included increased headache and facial pain. Nursing documentation shows one RN documents no pain, and another RN documents' "c/o [complains of] pain over frontal and maxillary (beneath the cheeks and above the teeth) areas." The documentation is inconsistent. | R 431 | | |

For long term care providers, a plan of correction is required for class A, B, & C violations.

STATE FORM                                  XVQZ11                          If continuation sheet 6 of 9

Case 2:13-cv-00744-NJ   Filed 04/30/15   Page 33 of 43   Document 72-3   KM 056

12627431582

PRINTED: 10/13/2010
FORM APPROVED

Wisconsin Department of Health Services

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1062 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C 08/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER MERCY WALWORTH HOSPITAL & MEDICAL C | STREET ADDRESS, CITY, STATE, ZIP CODE N2950 STATE ROAD 67 LAKE GENEVA, WI 53147 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| R 431 | Continued From page 6 | R 431 | | |
| | A review of Pt. #5's closed ER record was completed on 8/23/2010 at 11:47 p.m. Pt. #5 presented to the ER with complaints of a back injury and back pain. Pt. #5 was given Motrin at 7:00 p.m. and IV Dilaudid at 10:37 p.m. for pain. There is no reassessment of pain after the IV Dilaudid was given and before Pt. #5 was transferred to the medical floor approximately an hour after receiving the medication. | | | |
| | A review of Pt. #7's closed ER record was completed on 8/23/2010 at 12:15 p.m. Pt. #7 presented to the ER with complaints of low abdominal pain rated 8 out of 10 (10 being the worse pain imaginable) at 8:58 a.m. The ER MD saw Pt. #7 at 9:34 a.m. There is no time indicated when Tylenol was ordered for pain, but Pt. #7 did not receive pain medication until 3:19 p.m. RN Lead E was unable to determine why interventions for pain management took so long at the time of reviewing of findings at 4:15 p.m. on 8/23/2010. | | | |
| | These findings were confirmed with RN Manager D and RN Lead E on 8/23/2010 between 3:45 p.m. and 5:30 p.m. | | | |
| R 496 | 124.14(5)(a)1. MEDICAL RECORD SERVICES | R 496 | | |
| | AUTHENTICATION OF ALL ENTRIES. Documentation. All entries in medical records by medical staff or other hospital staff shall be legible, permanently recorded, dated and authenticated with the name and title of the person making the entry. | | | |
| | This Rule is not met as evidenced by: Surveyor: 26711 | | | |

For long term care providers, a plan of correction is required for class A, B, & C violations.

STATE FORM　　　　　　6899　　　XVQZ11　　　　If continuation sheet 7 of 9

PRINTED: 10/13/2010
FORM APPROVED

Wisconsin Department of Health Services

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1082 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C 08/24/2010 |
|---|---|---|---|
| NAME OF PROVIDER OR SUPPLIER MERCY WALWORTH HOSPITAL & MEDICAL C | | STREET ADDRESS, CITY, STATE, ZIP CODE N2950 STATE ROAD 67 LAKE GENEVA, WI 53147 | |

PRINTED: 10/13/2010
FORM APPROVED

Wisconsin Department of Health Services

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1082 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C 08/24/2010 |
|---|---|---|---|
| NAME OF PROVIDER OR SUPPLIER MERCY WALWORTH HOSPITAL & MEDICAL C | | STREET ADDRESS, CITY, STATE, ZIP CODE N2950 STATE ROAD 67 LAKE GENEVA, WI 53147 | |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| R 496 | Continued From page 7

Based on medical record review, policy and procedure review, and staff interview, this facility failed to ensure there were properly documented physician orders written for medications, laboratory tests, and diagnostic tests which include x-rays, computerized tomography (CT) scan, ultra-sound, and EKGs (electrocardiogram) in 7 out of 7 out of a total of 15 records reviewed (Pt.'s #3, 5, 6, 7, 8, 9, and 10). Failure to indicate when tests were ordered fails to establish a chronological picture of the course of patient care.

Findings include:

Facility policy titled, "Physician's Orders," dated 5/7/08 was reviewed on 8/23/10 at 3:30 p.m. The policy states, "All diagnostic and therapeutic orders must be given by medical staff members and residents, be in writing, dated, timed, and signed or countersigned by the ordering physician."

On 8/23/2010 at 11:13 a.m. a medical record review was completed on Pt. #3's closed ER record from 2/14/10. Pt. #3's medical record does not indicate the time the ER MD ordered medications, IVs (intravenous) in the form of a saline lock, laboratory (lab) tests, or ultra-sound and EKG.

On 8/23/2010 at 11:47 a.m. a medical record review was completed on Pt. #5's closed ER record from 2/13/10. Pt. #5's medical record does not indicate the time the ER MD ordered medications, IVs, or CT scan of the back.

On 8/23/2010 at 12:05 p.m. a medical record review was completed on Pt. #6's closed ER record from 3/27/10. Pt. #6's medical record | R 496 | | |

For long term care providers, a plan of correction is required for class A, B, & C violations.

STATE FORM                     6699          XVQZ11                     If continuation sheet 8 of 9

Wisconsin Department of Health Services

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1062 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C 08/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MERCY WALWORTH HOSPITAL & MEDICAL C | N2950 STATE ROAD 67 LAKE GENEVA, WI 53147 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| R 496 | Continued From page 8 | R 496 | | |
| | does not indicate the time the ER MD ordered medications, lab tests, or x-rays. | | | |
| | On 8/23/2010 at 12:15 p.m. a medical record review was completed on Pt. #7's closed ER record from 2/15/10. Pt. #7's medical record does not indicate the time the ER MD ordered medications or lab tests. | | | |
| | On 8/23/2010 at 12:50 p.m. a medical record review was completed on Pt. #8's closed ER record from 1/3/10. Pt. #8's medical record does not indicate the time the ER MD ordered lab tests. | | | |
| | On 8/23/2010 at 12:35 p.m. a medical record review was completed on Pt. #9's closed ER record from 3/27/10. Pt. #6's medical record does not indicate the time the ER MD ordered the saline lock IV, lab tests, or x-rays. | | | |
| | On 8/23/2010 at 1:10 p.m. a medical record review was completed on Pt. #10's closed ER record from 2/13/10. Pt. #10's medical record does not indicate the time the ER MD ordered medications, lab tests, or x-rays. | | | |
| | These findings were confirmed with RN Manager D and RN Lead E on 8/23/2010 between 3:45 p.m. and 5:30 p.m. | | | |

For long term care providers, a plan of correction is required for class A, B, & C violations.

STATE FORM                    6899          XVQZ11                    If continuation sheet 9 of 9

Case 2:13-cv-00744-NJ   Filed 04/30/15   Page 36 of 43   Document 72-3   KM_059

**Courtney Taplin**

| | |
|---|---|
| **From:** | Kim Howarth |
| **Sent:** | Monday, July 25, 2011 5:37 PM |
| **To:** | 'carrie.killoran@aurora.org' |
| **Cc:** | 'jackie.murphy@aurora.org'; Courtney Taplin; Belinda Mora |
| **Subject:** | Dr. Muzaffar 537pm |
| | |
| **Categories:** | In'TM |
| **TimeMattersID:** | M3D739F471EB8520 |
| **TM Matter No:** | 4905.41811 |
| **TM Matter Reference:** | Elkhorn Family Clinic, S.C./Corporate Matters |

This will confirm our meeting at my office Wednesday August 3 commencing at 9 am with Dr. Kamal Muzzafar and myself. My address for your navigation is below. We are otherwise the second Elkhorn exit heading south. Once off highway 43 turn left at the top of the ramp and then take the first two lefts after you pass the highway interchange. We are the building with the three "turrets" on top.

Kim A. Howarth, Esq.
Godfrey, Leibsle, Blackbourn & Howarth, S.C.
354 Seymour Court
Elkhorn, WI 53121
Telephone: (262) 741-1525 (direct)
Facsimile: (262) 723-7538
Email: khowarth@godfreylaw.com

The information in this email is confidential and may be protected by the attorney's work product doctrine or the attorney/client privilege. It is intended solely for the addressee(s); access to anyone else is unauthorized. If this message has been sent to you in error, please do not review, disseminate, distribute, or copy it. Please reply to the sender that you have received this message in error, then delete it. Thank you for your cooperation.

To ensure compliance with IRS Circular 230, any U.S. federal tax advice provided in this communication is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer (i) for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer; or (ii) promoting, marketing or recommending to another party or partnership or entity, an investment plan, arrangement or other transaction addressed herein.

1

**Courtney Taplin**

| | |
|---|---|
| From: | Patrick DeMoon |
| Sent: | Thursday, August 02, 2012 9:22 AM |
| To: | 'Killoran, Carrie' |
| Cc: | Kim Howarth; Courtney Taplin; Belinda Mora; Julie Strait |
| Subject: | Elkhorn Family Clinic 922am |

| | |
|---|---|
| Categories: | In email folder, In TM |
| TimeMattersID: | M4FC9A0BD764F656 |
| TM Matter No: | 4905.41811 |
| TM Matter Reference: | Elkhorn Family Clinic, S.C./Corporate Matters |

Thanks, Carrie. I will forward the corrected minutes to Dr. Muzaffar for his review.

Pat

Patrick S. DeMoon III, Esq.

Godfrey, Leibsle, Blackbourn & Howarth, S.C.
354 Seymour Ct.
Elkhorn, WI 53121
Telephone: 262-741-1535 (Direct)
Facsimile: 262-723-5091
pdemoon@godfreylaw.com
www.godfreylaw.com

The information in this e-mail is confidential and may be protected by the attorney's work product doctrine or the attorney/client privilege. It is intended solely for the addressee(s); access to anyone else is unauthorized. If this message has been sent to you in error, please do not review, disseminate, distribute, or copy it. Please reply to the sender that you have received this message in error, then delete it. Thank you for your cooperation.

To ensure compliance with IRS Circular 230, any U.S. federal tax advice provided in this communication is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer (i) for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer; or (ii) promoting, marketing or recommending to another party or partnership or entity, an investment plan, arrangement or other transaction addressed herein.

**From:** Killoran, Carrie [mailto:carrie.killoran@aurora.org]
**Sent:** Friday, July 27, 2012 2:22 PM
**To:** Patrick DeMoon
**Subject:** Dr. Muzzafar

Pat –
Apologies for the delay in getting corrected minutes to you – these were actually sent to me by the facility a few weeks ago, and I lost track of them in an overcrowded inbox. Please excuse this.

Attached are a corrected version of the minutes, which have replaced those that were previously sent to you in the MEC's records. I confirmed with the Medical Staff office that the date was a typo – the person preparing the minutes used the minutes from a prior meeting as a formatting template, but forgot to change the date to reflect the current meeting. No prior meeting or discussion regarding Dr. Muzzafar was held on the date that was previously reflected on the minute.

1

Dr. Muzzafar is also added as a guest – the omission of his name was again, an oversight by the administrative assistant who prepares the minutes. As for the reference to letters and correspondence reviewed, all that was presented were Dr. Muzzafar's original letter requesting review by the MEC of the Mercy case.

I hope that this puts Dr. Muzzafar's concerns to rest. Please let me know if I can provide any additional assistance.

Regards,
Carrie

**Carrie Norbin Killoran**

**Aurora Health Care | SVP–Chief Compliance Officer**
**750 West Virginia Street | PO Box 341880 | Milwaukee, WI 53234-1880**
**Phone: (414) 299-1711 | Fax: (414) 389-6735**

**CONFIDENTIALITY NOTICE:** This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information or otherwise protected by law. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

Case 2:13-cv-00744-NJ   Filed 04/30/15   Page 39 of 43   Document 72-3 KM 062

| COMMITTEE: | Medical Executive Committee | DATE: | July 1, 2010 |
|---|---|---|---|
| | | TIME: | 6:45 am |
| CHAIRPERSON: | Greg Gerber, MD | LOCATION: | C |

Portions of these minutes may be confidential information, disclosure of which is prohibited by section 146.38 Wis. Stats. Please consult Administration before distributing this document or any information contained therein to anyone other than members of the committee.

**ATTENDANCE:**   Dr. Gerber , Dr. Beatse, Dr. Angermeier, Dr. Pasikhov, Dr. Brower, Dr. Scherer, Dr. Batesky, Dr. Berkowitz, Kathleen Skowlund
Dr. Hobbs, Sharon Behrens, Terry Poepping

**ABSENT:**   Dr. Grueter, Dr. Carney

**GUEST:**   Physician 0827

| AGENDA | DISCUSSION / CONCLUSIONS | RECOMMENDATIONS / ACTIONS | RESP. PARTY / DATE |
|---|---|---|---|
| Physician 0827 | In February 2010, this physician requested an investigation of an incident occurring with a Mercy ED patient.  The committee has requested and received letters from the involved physicians explaining the circumstances of that incident.  The investigation of this incident coupled with past incidents revealed that physician 0827 has exhibited a repeated pattern of interaction difficulties with his colleagues.  Past incidents were discussed with him at a sub MEC meeting in May 2009.<br><br>The purpose of this special meeting is to find a creative solution to help him resolve his interpersonal issues. | The committee strongly recommended the following to physician 0827:<br>• Counseling:  a list of counselors will be provided.<br>• Working with a mentor:  it is expected that he meet with the mentor weekly for a 3 month period.<br><br>In addition, the committee advised that there will be 0 tolerance for any future similar incidents.  Corrective action will be pursued with any received report by the committee.<br><br>A follow up letter will be sent to physician 0827 with the above recommendations in writing. | July 8, 2010 Letter sent |

Case 2:13-cv-00744-NJ   Filed 04/30/15   Page 40 of 43   Document 72-3

| APPROVAL | *Greg t. Gerber ma* |
|---|---|
| | 7/01/2010 |
| | Greg Gerber, MD     Chairman Medical Executive Committee |
| | Date |

KM-0901

Andrew Sennit
W231 N1440 Corporate Court
suite number 210
Waukesha, WI 53186

Dated: June 12, 2013.

Dear Andrew,
We have known each other for approximately 12 years now.
I've always believed, that we are friends.

My staff has been calling the Aurora Epic personnel for several months in order
for the Elkhorn Family Clinic to obtain Aurora Epic as their EMR. Finally, we get a
response from you stating that the Elkhorn Family Clinic cannot get Aurora Epic.
I'm writing to you to get a reason why similarly situated Dr. Poplar was offered
the Aurora Epic EMR for approximately $40,000, but I'm not being given the
same even though I have taken call for the hospital emergency room for almost
10 years. I would appreciate a response from you in writing.

I hope this summer is treating you better than it's treating me.

Sincerely,

Kamal Syed Muzaffar
Elkhorn Family Clinic
100 S. Washington St.
Elkhorn, WI 53121.

CC: Lisle Blackbourn Attorney At Law.

received
6/17/13


**Aurora Health Care**

Aurora Accountable Care Network
12500 W. Bluemound Rd #302
Elm Grove, WI 53122

July 9, 2013

Elkhorn Family Clinic
Kamal S. Muzaffar, MD
100 S. Washington Street
Elkhorn, WI 53121

**CERTIFIED MAIL**

Dear Dr. Muzaffar:

The Board of Aurora Accountable Care Network has established a moratorium on adding new physician providers.

Exceptions to the moratorium are granted only on a case-by-case basis to meet the needs of the membership based upon practice location and specialty. Your request has been considered by the Regional Administrator and the Physician Cabinet for this Region of Aurora Health Care and does not meet the criteria for an exception at this time.

- No exception to the moratorium at this time for the South Region address listed below:

  Elkhorn Family Clinic
  100 S. Washington St.
  Elkhorn, WI 53121

*According to the Regional Administrator and Physician Cabinet for this Region, the limitation of the moratorium indicates that a provider cannot reapply to the Aurora Accountable Care Network for a period of five years.* Thank you for your interest in the Aurora Accountable Care Network. If our provider needs change in the future, we may contact you at that time.

If you have any questions regarding this process, please feel free to contact Jessie James, AACN Credentialing Supervisor, at 262-787-2741.

Sincerely,

*Jessie James*

Jessie James
AACN Credentialing Supervisor